IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:17-CV-215-KS

| | |
|---|---|
| ANGELA F. CARROLL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Angela F. Carroll ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for supplemental security income ("SSI"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. The court heard oral arguments on October 31, 2018. The court has carefully reviewed the administrative record and the motions and memoranda submitted by the parties. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings [DE #23] is denied, Defendant's Motion for Judgment on the Pleadings [DE #27] is granted, and the Commissioner's decision is upheld.

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for SSI on April 8, 2013, with an alleged onset date of April 8, 2013. (R. 30, 92, 105.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 116, 117–20, 124–28.) A hearing was held on October 22, 2015, as well as a supplemental hearing on June 23, 2016, before Administrative Law Judge ("ALJ") Edward T. Morriss, who issued an unfavorable ruling on August 15, 2016. (R. 50, 74, 30–44, 297.) The Appeals Council granted Plaintiff's request for review based on the ALJ having assigned great weight to the opinion of a single-decision maker and having failed to evaluate Plaintiff's carpal tunnel syndrome. (R. 211–12.) The Appeals Council issued a decision on October 10, 2017, denying Plaintiff's claim. (R. 1–11.) At that time, the decision of the Appeals Council became the final decision of the Commissioner. *See* 20 C.F.R. §§ 416.1479, 416.1481. Plaintiff seeks judicial review of the final administrative decision pursuant to 42 U.S.C. §§ 405 and 1383(c)(3).

## DISCUSSION

### I.  Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v.*

*Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the

Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* In making this determination, the ALJ must decide "whether claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981) "If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

When assessing the severity of mental impairments, the Commissioner must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the Commissioner rates the degree of functional limitation resulting from a claimant's mental impairment(s) in the claimant's abilities to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 416.920a(c)(3).[1] The Commissioner is required to

---

[1] At the time of the ALJ's decision, dated August 15, 2016, the "paragraph B" criteria listed the four broad functional areas as follows: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 416.920a(c)(3) (eff. June 13, 2011 to Jan. 16, 2017). The Social Security Administration revised the medical criteria for evaluating mental disorders, effective January 17, 2017. Pursuant to the regulation's directive that the revised criteria be applied to claims pending as of the effective date, the Appeals Council's decision, dated October 10, 2017, applied the new "paragraph B" criteria. Federal courts are to review the Commissioner's final decisions using the rules that were in effect at the time the decision was issued. 81 FR 66138, n.1, 2016 WL 5341732 (Sept. 26, 2016).

4

incorporate into her written decision pertinent findings and conclusions based on the "special technique." 20 C.F.R. § 416.920a(e)(3).

III. Agency's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). The Appeals Council adopted the ALJ's findings at steps one through five and found Plaintiff "not disabled" under the Act. (R. 4, 8.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since April 8, 2013, the alleged onset date. (R. 32.) Next, the ALJ determined Plaintiff had the following severe impairments: "depression/PTSD" and "chronic obstructive pulmonary disease." (*Id.*) The ALJ found Plaintiff's peripheral vascular disease and migraines to be non-severe impairments. (*Id.*) The Appeals Council also found Plaintiff's carpal tunnel syndrome to be a non-severe impairment because it did not meet the duration requirements of the Act. (R. 4–5, 212, 554.)

At step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 32.) The ALJ analyzed Listings 3.02 (chronic pulmonary insufficiency), 12.04 (affective disorders), and 12.06 (anxiety related disorders). (R. 33.) The Appeals Council adopted the ALJ's findings as to Listing 3.02 but noted that the medical criteria for evaluating mental disorders had been revised effective January 17, 2017. (R. 5.) Applying the revised criteria, the Appeals Council determined that Plaintiff did not have an impairment

5

or combination of impairments that met or medically equaled the severity of the revised Listings 12.04 (depressive, bipolar, and related disorders) or 12.15 (trauma- and stressor-related disorders.) (R. 5.)

Prior to proceeding to step four, the Appeals Council adopted the ALJ's assessment of Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had

> the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c). She should avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation, and she is limited to understanding, remembering and carrying out simple instructions.

(R. 6.) In making this assessment, the Appeals Council and the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. 6, 37.) At step four, the Appeals Council and the ALJ concluded that Plaintiff had no past relevant work. (R. 8, 43.) At step five, the ALJ concluded, based on Plaintiff's age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (R. 43.) The Appeals Council and the ALJ found that Plaintiff's non-exertional limitations do not significantly erode the occupational base of unskilled work at the medium exertional level and that using 20 C.F.R. § 416.969 and Medical-Vocational Rule 203.28 as a framework would direct a conclusion that Plaintiff is "not disabled." (R. 8, 43–44.) The ALJ initially assigned great weight to the opinion of single decision-maker William Garrett; however, the Appeals Council assigned the opinion no weight

finding that a "single decision maker is not an acceptable medical source under the rules in effect at the time [Plaintiff] filed [her] claim." (R. 212.)

IV. Plaintiff's Arguments

Plaintiff contends the Commissioner erred by:

> (A) improperly discounting the weight assigned to the opinion of Plaintiff's treating psychiatrist Dr. Christopher Myers (Pl.'s Mem. Supp. Mot. J. Pldgs. [DE #24] at 15–22); and
>
> (B) failing to set forth in the RFC all of Plaintiff's non-exertional limitations related to Plaintiff's mental impairments (*id.* at 23–25).

The Commissioner has addressed each argument and contends that the Appeals Council's decision correctly applied the relevant law and regulations and is supported by substantial evidence. The court agrees with the Commissioner, and therefore, affirms the Appeals Council's decision.

A. Medical Opinion

Plaintiff argues that the ALJ and Appeals Council incorrectly gave "little weight" to the October 2015 letter from her treating psychiatrist Dr. Christopher Myers reporting that Plaintiff is not able to sustain employment. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 17–18.) The Commissioner contends that the decision to apply less than controlling weight to Dr. Myers' opinion is supported by substantial evidence and that Dr. Myers' opinion that Plaintiff is unable to sustain employment is not entitled to special significance because it concerns the ultimate issue of disability, which is a matter reserved exclusively to the Commissioner. (Def.'s Mem. Supp. J. Pldgs. at 6.)

7

Plaintiff's claim was filed before March 27, 2017. Thus, the standard for evaluating medical opinion evidence is set forth in 20 C.F.R. § 416.927.[2] Under § 416.927, a treating physician's opinion should generally be accorded greater weight than the opinion of a non-treating physician's opinion, but the court is not required to give the testimony controlling weight in all circumstances. *Mastro*, 270 F.3d at 178. Rather, a treating physician's opinion on the nature and severity of a claimant's impairment is given controlling weight only if it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on the record." *Id*; *see also* 20 C.F.R. § 416.927(c)(2). "[B]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro*, 270 F.3d at 178 (quoting *Craig*, 76 F.3d at 590) (internal quotation marks omitted). Thus, the ALJ has the discretion to give less weight to the treating physician's testimony in the face of contrary evidence. *Id.* "Additionally, the ALJ is not bound by a treating physician's opinion regarding whether a claimant is disabled, as that opinion is reserved for the Commissioner." *Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. June 9, 2011) (citation omitted).

If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must determine the weight to be given the opinion, considering

---

[2] This regulation, as well as agency rulings interpreting § 416.927, have been rescinded and replaced by 20 C.F.R. § 416.920c, effective March 27, 2017, for claims filed on or after that date. *See* 20 C.F.R. § 416.920c; 82 Fed. Reg. 15,263 (Mar. 27, 2017).

8

the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) any specialty or expertise of the treating physician; and (6) any other factors tending to support or contradict the physician's opinion, such as the extent of the physician's understanding of the Social Security disability programs and the physician's familiarity with other information in the record. 20 C.F.R. § 416.927(c)(2)–(5); *see also Parker*, 792 F. Supp. 2d at 894.

While an ALJ is under no obligation to accept any medical opinion, the weight afforded such opinions must nevertheless be explained. "The ALJ is not required to discuss all of these factors." *Ware v. Astrue*, No. 5:11-CV-446-D, 2012 WL 6645000, at *2 (E.D.N.C. Dec. 20, 2012) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), and *Munson v. Astrue*, No. 5:08-CV-110-D, 2008 WL 5190490, at *3 (E.D.N.C. Dec. 8, 2008)). "However, the ALJ must give 'good reasons' for the weight assigned to a treating source's opinion." *Ware*, 2012 WL 6645000, at *2 (citing 20 C.F.R. § 416.927(c)(2), and SSR 96–2p, 1996 WL 374188, at *5).

Here, the agency assigned little weight to the opinion of Dr. Myers because it found the "limitations he reported were not consistent with his own treatment records." (R. 7.) Dr. Myers, a psychiatrist with Physician Alliance for Mental Health, provided a letter dated October 20, 2015. Dr. Myers stated that he has been treating Plaintiff intermittently since May 2013 and that Plaintiff "suffers from Major Depressive Disorder . . . characterized by depressed mood, insomnia, a lack of energy,

9

impaired attention and concentration, depressed appetite, and feelings of hopelessness and worthlessness." (R. 632.) The letter states that Plaintiff "also struggles with Chronic Posttraumatic Stress Disorder (PTSD)." (*Id.*) Dr. Myers notes that Plaintiff has responded positively to treatment, though "[h]er PTSD has been less responsive to treatment." (*Id.*) Regarding Plaintiff's PTSD, Dr. Myers states:

> Ms. Carroll has experienced a positive response to treatment for her PTSD, but even at her best she was merely comfortable at home. Prior to this she spent most of her time secluded to her room and was unable to attend to independent living skills (managing finances, paying bills, etc.). During that time she required considerable support from her mother for meeting her basic needs. With the positive response she was able to attend to most independent living skills, but she was unable to function outside the walls of her residence. She remained secluded to her home, where she felt safe, as any task outside of the home led to heightened anxiety, with hypervigilance and considerable difficulties with attention/concentration. As of my last meeting with Ms. Carroll, she was unable to tolerate social interactions and tends to avoid any social interaction and isolate.
>
> With continued treatment I am hopeful Ms. Carroll will improve, but her prognosis is guarded given her lack of response to treatment to this date. In my opinion, she is not able to sustain employment at this time.

(*Id.*)

Although the agency has the discretion to give less weight to a treating physician's opinion, the weight and reasoning behind the decision needs to be explained. *Bailey v. Berryhill*, No. CV ADC-16-3181, 2017 WL 2735552, at *6 (D. Md. June 23, 2017); *Johnson v. Barnhart*, 434 F.3d 650, 655–56 n.5 (4th Cir. 2005) (citing *Mastro*, 270 F.3d at 178). Here, the ALJ explained his reasons for giving little weight to Dr. Myers' opinion statement that Plaintiff "is not able to sustain employment at this time." (R. 632.) The ALJ found that Plaintiff "suffers from depression and PTSD"

but that the functional limitations reported in the October 20, 2015, letter were not supported by exam findings and are inconsistent with the other medical evidence of record. (R. 42.)

Acknowledging that Plaintiff had been assessed with Global Assessment of Functioning (GAF) scores in the moderate to serious impairment range on a number of occasions in 2013 and 2014, the ALJ found the assessments to be of little weight because they "were, most likely, primarily based on [Plaintiff's] subjective complaints and not upon objective findings." (R. 42.)[3] The ALJ thoroughly discussed each of Plaintiff's May 2013, August 2013, January 2014, April 2014, June 2014 visits, discussing the inconsistencies between Plaintiff's low GAF scores on those dates and the objective findings in the respective treatment records. (R. 39–41, 42, 414, 419, 425, 430, 435.) The ALJ also pointed out that Plaintiff's subjective reports were inconsistent with the record and discussed these differences in detail regarding her April 2013, May 2013, August 2013, January 2014, June 2014, July 2014, October

---

[3] The GAF scale was previously endorsed by the American Psychiatric Association for use by mental health professionals in rating an individual's level of social, occupational and psychological functioning. A GAF score in the range of 41 to 50 was considered to reflect "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM"), 32 (4th ed. text rev. 2000). The Fifth Edition of the DSM (DSM-V), published in 2013, modified the multiaxial assessment system, discontinuing use of the GAF. AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS, 16 (5th ed. 2013). Prior to publication of the DSM-V, GAF scores, though not determinative of disability, have generally been considered medical evidence that informs the ALJ's judgment. *See, e.g.*, *Locklear v. Colvin*, No. 7:14-CV-154-FL, 2015 WL 4740786, at *8 (E.D.N.C. Aug. 10, 2015).

2014, January 2015, March 2015, April 2015, September 2015, January 2016, and February 2016 visits to providers. (R. 39–42, 388, 410, 414, 419, 424, 430, 435, 438, 566, 571, 575, 580, 583, 643, 647, 657.) Medical records from Physician Alliance document Plaintiff's "attention/concentration" to be "within normal limits" at each of her visits from May 2013 to February 2016. (R. 411, 416, 421, 426, 432, 562, 567, 572, 576, 581, 585, 642, 648, 653, 658.)

Dr. Myers' letter also appears to be at odds with the Clinical Assessment Update performed by his office on April 22, 2015, as well as records of treatment provided after his October 20, 2015, letter. The April 2015 Clinical Assessment Update reports no change in Plaintiff's diagnoses of "Major Depressive Disorder, Recurrent, Severe" and "Posttraumatic Stress Disorder" but indicates mild impairment in concentration, mild impairment in memory, congruent affect, moderate limitations in activities of daily living, mild impairment in judgment ("poor follow through with tasks"), good insight, and mild limitations in the area of "job/school performance." (R. 662, 664.) In June 2015, Plaintiff was doing well with no signs or symptoms of depression, no nightmares, flashbacks or distressing moments following a period of no interaction with the individual who had abused her as a child. However, the month before Dr. Myers' letter, Plaintiff indicated that "[e]verything went to hell" – she and her fiancé broke up and she was kicked out of the house, her father had a heart attack, and she was arrested for violating probation. (R. 657). Notably, Plaintiff reported she had not been taking her medications. (*Id.*) Following a November 2015 change in medication (R. 654), Plaintiff improved

12

significantly. On January 6, 2016, she advised Dr. Myers that she was still homeless but was doing "okay." (R. 647.) She reported that she had been avoiding contact with her father, had spent the Christmas holidays with her children and grandchildren, and had begun doing volunteer work at a horse stable. (*Id.*) The last record of treatment in the record is from February 2016. Plaintiff told Dr. Myers that she was doing "okay" and felt that the change in her medications had been effective. (R. 643.) She reported no nightmares and limited flashbacks and stated that she was spending the majority of her time at her ex-boyfriend's house and was engaging in limited outside activity. (*Id.*)

The record further reflects greater social interaction than Plaintiff asserts. While Plaintiff claims self-isolation, she has had two intimate, live-in relationships during the time-period involved and has remained friends with her former boyfriend after their breakup. (R. 424, 662-68.) She also maintains contact with her children and her sister and has two friends with whom she spends time. (R. 662-68.) In January 2014, she told Dr. Myers she had begun a new relationship and was looking for a job. (R. 424.) In April 2014, she was arrested for impaired driving. (R. 419.) In January 2015, she reported having moved into a trailer rent-free for a year in exchange for her doing cleaning work for the owner. (R. 571.)

The Appeals Council adopted the ALJ's findings, giving little weight to Dr. Myers' letter and assigning great weight to the state agency psychologist Betty Aldridge, Psy.D., and examining psychiatrist Richard Carlson, M.D. (R. 7.) The Appeals Council found Dr. Aldridge's opinion consistent with the longitudinal record

13

and assigned great weight to Dr. Carlson, who had the "opportunity to personally examine Plaintiff and review the entire longitudinal record." (R. 7.) Dr. Aldridge stated that although Plaintiff had a severe mental disorder, Plaintiff was capable of "understanding and carrying out simple tasks but may have some problems tolerating the stress of day-to-day work." (R. 43, 101.) The ALJ noted Dr. Carlson's reports from Plaintiff's consultative evaluation on December 17, 2015, in which he stated that "he could not see that she would have any difficulty interacting with others in the workplace or performing work activities on a consistent basis." (R. 42, 637.) The ALJ found these opinions from Drs. Aldridge and Carlson to be consistent with the medical record and inconsistent with Dr. Myers' opinion that Plaintiff could not sustain employment.

Further, an assessment on the ability to work is not a medical opinion but is, instead, an administrative finding on an issue reserved to the Commissioner. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 256 (4th Cir. 2017); *see also* 20 C.F.R. § 416.927(d)(2) (providing that medical opinions do not include statements that a claimant is "disabled" or "unable to work"). Pursuant to the regulations, the ALJ and Appeals Council considered Dr. Myers' letter in light of the other evidence of record. Given their findings, which are supported by the record, the ALJ and Appeals Council did not err in assigning Dr. Myers' statement little weight.

B. RFC Assessment

Second, Plaintiff contends that the agency failed to account for all of Plaintiff's non-exertional limitations in the RFC. (R. 23.) Specifically, Plaintiff argues the RFC

14

limitation of "understanding, remembering and carrying out simple instructions" does not account for Plaintiff's moderate difficulties in concentration, persistence, or pace. (*Id.*) The court finds that the ALJ applied the correct legal standard in assessing Plaintiff's RFC and that the ALJ's decision in this regard is supported by substantial evidence.

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96–8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. § 416.945(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. §416.945(a)(4). It is based upon all relevant evidence and may include the claimant's own description of limitations from alleged symptoms. 20 C.F.R. § 416.945(a)(3); SSR 96–8p, 1996 WL 374184, at *5;. The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96–8p, 1996 WL 374184, at *7. The RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Mascio,* 780 F.3d at 636). In other words, the ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Id.* (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). If necessary, an ALJ must "explain how any

15

material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7.

The functional area of concentration, persistence, or pace refers to the "abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Part. 404, Subpart. P, App. 1, § 12.00(E)(3) (eff. Apr. 1, 2017 to Mar. 31, 2018); *see also Mascio*, 780 F.3d at 638. According to the regulations, examples of the ability to focus attention and stay on task include:

> Initiating and performing a task that [the claimant] understand[s] and know[s] how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

*Id.*

*Mascio* and SSR 96-8p require an explanation as to why a particular finding regarding Plaintiff's functional abilities with respect to concentration, persistence, or pace translates or does not translate into an RFC restriction. The ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Mascio*, 826 F.3d at 189. "[O]nce an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *Brickhouse v. Berryhill*, No. 2:17-CV-43-D, 2019 WL 336037, at *7 (E.D.N.C. Jan. 2, 2019), *mem. and recommendation adopted*, 2019 WL 334565

(E.D.N.C. Jan. 25, 2019) (quoting *Collins v. Berryhill*, No. 1:17-CV-224, 2018 WL 278667, at *3 (M.D.N.C. Jan. 3, 2018)).

Here, the Commissioner built "an accurate and logical bridge" between the evidence and the RFC findings regarding Plaintiff's concentration, persistence, or pace limitation. The Appeals Council found mild restriction in Plaintiff's ability to understand, remember or apply information; mild limitation in the ability to interact with others; moderate limitation in the ability to concentrate, persist, or maintain pace; and no limitation in the ability to adapt or manage herself. (R. 5–6.)

In assessing Plaintiff's RFC, the ALJ accorded great weight to the December 2015 consultation by examining psychiatrist Richard Carlson, M.D., in which it was reported that Plaintiff "slowly did four digit spans forwards and backwards and recalled 3/3 objects after five minutes and gave me her date of birth." (R. 637.) Dr. Carlson reported that "[i]n doing serial 7s from 100 she got 93, 86, and then 78. In doing serial 3s from 20 she went down all the way correctly." (*Id.*) Dr. Carlson described Plaintiff's concentration as "good" and noted that Plaintiff followed instructions, was able to spell "world" forwards and backwards correctly, is capable of managing her funds, and can perform simple and more detailed tasks. (*Id.*) Based upon his examination and a review of Plaintiff's medical records, Dr. Carlson provided the following opinions:

> [Plaintiff] can perform simple and more detailed tasks.
>
> She accepts instructions well.

17

> I cannot see that she would have any difficulty interacting with others in the workplace or performing work activities on a consistent basis.
>
> I cannot see that she would have difficulty maintaining regular attendance and performing a normal workday and workweek.
>
> She may have difficulty with stressors in the workplace.

(R. 637–38.) Although Plaintiff argues that the ALJ relied solely upon Dr. Carlson's examination in determining that no additional non-exertional limitations should be imposed, the ALJ's decision demonstrates that he considered Plaintiff's testimony from her hearing and supplemental hearing, medical records from Physician Alliance for Mental Health, Coastal Family Medicine, New Hanover Regional Medical Center emergency room, third party statements, and the opinion from Dr. Aldridge in determining that Plaintiff's impairments are not particularly serious to be expected to produce the degree of functional limitations alleged by Plaintiff. (R. 39–43.)

The Appeals Council considered Plaintiff's moderate limitation in the ability to concentrate, persist, or maintain pace and adopted the ALJ's RFC assessment. (R. 6.) The ALJ discussed that because Plaintiff "has required some treatment and experienced some limitations due to her depression and PTSD . . . I have limited the claimant to understanding, remembering and carrying out simple instructions. This limitation adequately takes into account any mental limitations caused by her depression and PTSD." (R. 42.) The ALJ further stated that there are "no clear findings that the claimant would have problems with stress. Moreover, the limitation to simple routine repetitive tasks would likely take care of any stress problem." (R.

43.) The ALJ noted that although the record is positive for Plaintiff's depression, PTSD, and chronic obstructive pulmonary disease,

> [t]he objective evidence does not document a particularly serious condition, and does not confirm that these impairments are of such severity that they could reasonably be expected to produce the degree of functional limitations alleged by the claimant. Considering the claimant's medical evidence in its entirety and her testimony, I conclude that the claimant's testimony is not fully consistent with the medical evidence of record and she retains the [RFC assessed].

(R. 43.)

Both the ALJ and the Appeals Council pointed out that Plaintiff's attention and concentration were consistently noted as "within normal limits" on mental status examinations by her treating providers, as well as by the consultative psychiatric examiner. (R. 6, 39-42). These findings are supported by the medical evidence. (*See, e.g.*, R. 411, 416, 421, 426, 432, 562, 567, 572, 576, 581, 585, 642, 648, 653, 658.)

Here, the ALJ extensively reviewed the record and discussed how Plaintiff's mental impairments would be "expected to cause some deficits in functioning but not entirely preclude all work activity." (R. 39.) These limitations were accounted for in Plaintiff's RFC, and the Appeals Council and the ALJ built an "accurate and logical bridge" by explaining their assessment of Plaintiff. The Appeals Council's findings are supported by substantial evidence, and Plaintiff has not cited any evidence of functional limitations not considered by the agency.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings [DE #23] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE #27] is GRANTED, and the Commissioner's decision is AFFIRMED.

This 26th day of February 2019.

_____
KIMBERLY A. SWANK
United States Magistrate Judge